IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEWART LUNN, Individually          §
and as Next Friend of               §
CHANTELLE LUNN, CHERYL LUNN,        §
and TAYLOR LUNN,                    §
                                    §
          Plaintiff,                §
                                    §
v.                                  §          CIVIL ACTION NO. H-04-404
                                    §
FRAGOMEN, DEL REY, BERNSEN          §
and LOEWY P.C., AUSTIN T.           §
FRAGOMEN, JR., ALFRED J. DEL        §
REY, JR., PETER H. LOEWY, JOHN      §
QUINN, ROBERT DIPIERRO, PAUL        §
HEJINIAN, MICHELLE MYERS, and       §
TINA R. NIEDZWIECKI,                §
                                    §
          Defendants.               §

MEMORANDUM AND ORDER

Pending are Defendants Fragomen, Del Rey, Bernsen and Loewy
P.C.'s, Austin T. Fragomen, Jr.'s, Alfred J. Del Rey, Jr.'s, Peter
H. Loewy's, John Quinn's, Robert DiPierro's, Paul Hejinian's,
Michelle Myers's, and Tina R. Niedzwiecki's Motion for Summary
Judgment (Document No. 17) and Motion to Strike (Document No. 19).
After carefully considering the motions, responses, and the
applicable law, the Court concludes that the motions should be
granted.

I.   Background

Plaintiff Stewart Lunn ("Lunn"), individually and on behalf of
his wife Cheryl Lunn and their children Chantelle and Taylor Lunn,

brings this legal malpractice action against Defendants Fragomen, Del Rey, Bernsen and Loewy P.C. (the "Firm"), Austin T. Fragomen, Jr., Alfred J. Del Rey, Jr., Peter H. Loewy, John Quinn, Robert DiPierro ("DiPierro"), Paul Hejinian, Michelle Myers, and Tina R. Niedzwiecki ("Niedzwiecki")(collectively, "Defendants"), asserting claims for negligence, gross negligence, negligence per se, breach of contract, fraud and misrepresentation, intentional infliction of emotional distress, tortious interference with contractual relationship, libel, and violations of the Texas Deceptive Trade Practices Act ("DTPA").  The gravamen of Lunn's complaint is that Defendants breached duties of confidentiality and loyalty owed to him by disclosing confidential information to his former employer, UCISCO/Praxair ("Praxair").

In 1983, Praxair hired Lunn, a Canadian citizen, to work in Canada.  In 1996, Lunn applied for and received a position in Praxair's Houston, Texas office, and Lunn and his family moved to Texas on a non-immigrant work visa.  Shortly thereafter, Praxair hired the Firm, a New York law firm specializing in corporate immigration law, to assist Praxair in sponsoring Lunn for lawful permanent residency in the United States (<u>i.e.</u>, a "green card") based on his employment in Texas.  Accordingly, the Firm filed an immigrant work visa petition on behalf of Praxair, which was approved by the Immigration and Naturalization Service ("INS") on April 11, 1997.

The Firm then assisted Lunn in filing an application for
adjustment of status.   In preparing the application, which
specifically asks the applicant to disclose any criminal history,
Lunn revealed for the first time that he had been convicted of
reckless driving and sentenced to 60 days in jail after he led
police on a chase in Ontario, Canada in 1976 (the "1976
Conviction").[1]   To address Lunn's criminal history, the Firm
prepared, and Lunn signed, an affidavit that provided additional
information about the 1976 Conviction and stated that Lunn had
"never been arrested or convicted of any other crime."   *See*
Document No. 18 ex. 1-A.   The application and affidavit were
submitted to the INS on October 9, 1997, and over the next four
years, the Firm monitored the status of Lunn's application,
reporting all information to both Lunn and Praxair. *See* <u>id.</u> ex. 1-
K at 21-23.   At no time did Lunn object to the Firm sharing
information about his immigration case with Praxair.   <u>Id.</u>

After numerous delays, Lunn's adjustment of status interview
was scheduled with the INS for December 5, 2001, in Houston, Texas.
Valerie Lercara ("Lercara"), a member of Praxair's legal

---

[1] Although Lunn had not previously disclosed the 1976
Conviction to Praxair, Praxair neither took disciplinary action
against Lunn nor otherwise expressed any concern or displeasure
upon learning of the conviction. *See* Document No. 18 exs. 1-C; 1-K
at 12-18.   Moreover, the conviction was freely discussed among
Lunn, Praxair legal personnel, and the Firm, and Lunn never
indicated that he objected to the Firm discussing the conviction
with Praxair.   <u>Id.</u>

3

department, arranged for DiPierro, an attorney with the Firm, to accompany Lunn to the interview. Id. ex. 1-K at 22-23. During the interview, the INS agent asked Lunn whether the date September 5, 1969, meant anything to him, as the FBI database indicated that a Stewart William Lunn, born on July 18, 1952, in Ontario, Canada, had been arrested and convicted on a charge of "possession of auto" in Ottawa, Canada in 1969. Id. ex. 1-E, ex. 1-K at 23; Document No. 31 ex. 4. According to Lunn, he did not recall having been arrested in 1969. Document No. 18 ex. 1-K at 23-24. When the INS agent proceeded to ask Lunn how many times he had been arrested and/or whether there was an arrest he had not disclosed, however, Lunn admitted that prior to the 1976 Conviction, he had been convicted of possession of stolen property (the "1960s Conviction"). Id. at 24; Document No. 31 ex. 4.[2] Lunn insisted that he had forgotten about the prior conviction until the INS

---

[2] Although Lunn conceded in his deposition that he admitted to having been convicted of possession of stolen property, he testified that he did not admit to having been convicted in 1969. See Document No. 18 ex. 1-K at 6-8, 23-24. According to Lunn, he "didn't put a date on [the conviction]" during the INS interview, but he believes his conviction for possession of stolen property was in 1967 or 1968. Id. at 8, 23-26. DiPierro's interview notes, however, indicate that Lunn acknowledged in the INS interview that he had been convicted of possession of stolen property in 1969. Document No. 31 ex. 4.

Lunn further testified in his deposition that the 1969 "possession of auto" conviction recorded in the FBI database does not belong to him, but actually belongs to a first or second cousin, also named Stewart William Lunn. See Document No. 18 ex. 1-K at 61-64, 95-106.

4

agent raised the issue in the interview. Document No. 18 ex. 1-K at 24. After asking Lunn a few more questions about his employment, the INS agent instructed Lunn to provide him with records showing the disposition of the 1960s Conviction, along with some additional photographs of his son, no later than February 4, 2002. Id. at 28-30; Document No. 31 ex. 4.

Immediately after the interview, Lunn conferred with DiPierro in the hallway outside the INS office. Document No. 18 ex. 1-K at 28. DiPierro asked Lunn about the 1960s Conviction, and Lunn confirmed that he had been arrested for possession of stolen property after stolen tools were found in his car and that he had received one year of probation. Id. ex. 1-K at 30. DiPierro told Lunn that he would take care of obtaining the records that the INS officer had requested related to the disposition of the 1960s Conviction. Id. ex. 1-K at 28-30. At that point, it had not occurred to Lunn that Praxair might take disciplinary action against him based on the 1960s Conviction, and Lunn did not instruct DiPierro not to disclose the 1960s Conviction to Praxair. Id. at 32-33; 107-09.

Upon returning to his office, Lunn immediately reported to his supervisor at Praxair, John Hoose ("Hoose"), what had transpired during the interview, including details about his 1960s Conviction. See Document No. 18 ex. 1-M at SRS 0781, 0791, 0815. Lunn followed up this conversation with an e-mail to Hoose, stating:

John, I'm not sure how to deal with this situation in regards to others in [Praxair], Tom, Mike, etc. I realize it is something that happened a very long time ago, but having to deal with it today is very embarrassing. Cheryl and the kids are not even aware of this, well, Cheryl is now. Again, I apologize for putting you through this as well.

The lawyer that was with us at the interview said he would be in touch with Valerie. I'm expecting Valerie will fill us in on where we stand or what I need to do now, while gloating I'm sure.

My understanding is as follows.

In regards to the issue the INS has on file, we need to get a disposition from Ottawa Canada and send to the INS office for review by February 4, 2002. The immigration officer said we would not require another interview. The INS officer made me feel this is not a big deal. He said we would be able to get verification of the green card approval from there [sic] web site. We also need to send a picture of Taylor with the paperwork, because they stapled through his picture in the INS file.

and unfortunately the saga continues!

Id. ex. 1-M at SRS 0781.

On December 7, 2001, Niedzwiecki, another attorney with the Firm, contacted Lercara to relay what had transpired during the INS interview, including Lunn's acknowledgment of the 1960s Conviction, and faxed to Lercara a copy of DiPierro's interview notes. Document No. 31 ex. 2; ex. 4.[3] The same day, the Praxair legal

---

[3] Shortly thereafter, the Firm informed Lunn by letter that it could no longer represent him because a conflict of interest had arisen between him and Praxair. *See* Document No. 18 ex. 1-K at 106-07. By December 14, 2001, Lunn had retained his current litigation counsel, who sent DiPierro a letter instructing him to cease all communications with Praxair regarding Lunn's immigration status. *See* id. ex. 1-I. Defendants complied with this

department asked the Praxair Corporate Security department to begin an investigation of Lunn. Document No. 18 ex. 1-C. After reviewing DiPierro's interview notes and interviewing Lunn and Hoose on December 13, 2001, Praxair's Internal Investigations Manager Robert Jones ("Jones") concluded that Lunn had lied about the 1960s Conviction and had misrepresented the 1976 Conviction under oath to the INS. Id. In a written report issued December 17, 2001, Jones summarized his findings as follows:

> Lunn admitted that he did in fact have a 1969 criminal conviction. He also provided information indicating that his arrest in 1976 involved drugs and alcohol offences in addition to the dangerous driving charge of which he has already indicated he was convicted.[4]
>
> . . .
>
> [Lunn] maintains that he forgot all about his 1969 arrest, conviction and incarceration until he was interviewed by the USINS on 5 December 2001. However, given the detailed summary he was able to provide the undersigned concerning this matter, it is more reasonable

instruction and promptly forwarded Lunn's immigration case file to Lunn's counsel.

[4] In his affidavit to the INS, Lunn had averred, "[a]lthough I do not remember the exact charges which led to my conviction, I am quite certain that I was not convicted of any crime involving alcohol or drugs." Document No. 18 ex. 1-A. According to Praxair, however, Lunn acknowledged during his interview with Jones that "his 1997 affidavit (Annex A) misrepresented his 1976 conviction." Id. ex. 1-C. Lunn disputed this statement during his deposition, but he admitted that marijuana belonging to his girlfriend had been found in his car when he was arrested in 1976. Id. ex. 1-K at 38-42, 50-51. Because Lunn did not recall having been charged with an alcohol or drug related offense, however, he did not believe it was necessary to disclose to Praxair or to the Firm the fact that marijuana was found in his car. Id. at 40-42.

to  conclude  that  Lunn  deliberately  withheld  this
information.

Id.  Two  days  later,  on  December  19,  2001,  Praxair  terminated

Lunn's employment.  Id. ex. 1-F.[5]

On  January  7,  2002,  Lunn's  counsel  demanded  $367,000  in

damages  from  Praxair,  alleging  that  Praxair  had  unlawfully

terminated Lunn's employment on account of his age and nationality.

Id. ex. 1-D.  Lunn filed a charge of discrimination with the EEOC

two  months  later.   Id. ex. 1-G.   After  the  EEOC  dismissed  his

claim,  Lunn's  counsel  demanded  $2.6  million  in  damages  from  the

Firm, alleging for the first time that the Firm's disclosure of the

1960s Conviction to Praxair  was  the  cause  of  Lunn's  termination.

Id. ex. 1-J.   Defendants  now  move  for  summary  judgment  on  all  of

Lunn's claims.

_____

[5] Despite  his  termination,  Lunn  received  his  green  card  in
early 2002 after submitting to the INS a letter from Canadian
authorities that stated:

I  have  verified  that  the  criminal  record  that  was
documented  on  the  FBI  system  was  purged  from  the  Royal
Canadian  Mounted  Police  Identification  system  as  a  result
of  inactivity  in  excess  of  fifteen  years.   There  is  no
indication that the record was actually that of the above
noted  person  as  all  fingerprints  and  records  were  purged
according  to  Canadian  law  at  that  time.

We  have  been  in  contact  with  the  FBI  and  they  have
advised  us  that  the  record  has  know [sic]  been  purged
from  their  data  files  and  that  when  Mr.  Lunn  is  queried
again,  there  should  be  no  record  within  their  data  base.

See Document No. 18 ex. 1-H; ex. 1-K at 95-104.

8

II.   <u>Summary Judgment Standard of Review</u>

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   <u>Id.</u>   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   <u>Id.</u>

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.   <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

9

Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III.  Discussion

#### A.  Motion to Strike

As an initial matter, Defendants move to strike and/or exclude the testimony of Lunn's expert, John Gibson ("Gibson"), arguing, *inter alia*, that his expert report fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B).  *See* Document No. 19. Specifically, Defendants complain that Gibson's report does not "contain a complete statement of the opinions to be expressed and the basis and reasons therefor" and fails to specify "the data or other information considered by [Gibson] in forming [his] opinions." *See* FED. R. CIV. P. 26(a)(2)(B).

In his "report," which consists only of a letter to Lunn's counsel, Gibson does not purport fully to state his expert opinions

and his reasons for such. *See* Document No. 20 ex. 1. Rather, his letter is only a statement as to what he expects his opinions would be if hired to work on Lunn's case. <u>Id.</u> Gibson does not provide reasons for the hypothetical opinions outlined in his letter, and although he states that the opinions are based on "the file" that Lunn's counsel sent to him, Gibson does not endeavor to identify what data or other information the file contained. <u>Id.</u> In sum, Gibson's letter is not an expert report that comports with Rule 26(a)(2)(B). Indeed, Gibson's solicitous declaration in the letter, "If you want an additional report of my opinions and conclusions, please let me know," reflects that not even Gibson viewed the letter as an "expert report." <u>Id.</u>

In response to the motion to strike, Lunn does not dispute that Gibson's report fails to satisfy Rule 26(a)(2)(B). Instead, Lunn asserts that Gibson is not an expert to whom the requirements set forth in Rule 26(a)(2)(B) apply because Gibson "has not yet been paid to provide testimony at trial." Document No. 32. This assertion is without merit. Rule 26(a)(2)(B) is not limited to experts retained to provide testimony at trial, but rather applies to any witness who is "retained or specially employed to provide expert testimony *in the case*." Fᴇᴅ. R. Cɪᴠ. P. 26(a)(2)(B) (emphasis added). Thus, Gibson's report, which does not comply with Rule 26(a)(2)(B), cannot be considered in connection with

11

Defendants' motion for summary judgment.  Defendants' motion to strike and/or exclude Gibson's testimony will therefore be granted.

B.   Motion for Summary Judgment

1.   Lunn's Legal Malpractice Claims

Lunn contends in his Petition that Defendants were negligent and grossly negligent in disclosing the 1960s Conviction to Praxair and in failing to withdraw immediately upon learning of the 1960s Conviction.[6]  A legal malpractice action is based on negligence. Rodriquez v. Klein, 960 S.W.2d 179, 184 (Tex. App.--Corpus Christi 1997, no pet.).  To recover on a claim of legal malpractice, a plaintiff must prove (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred.  Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995)).  Defendants move for summary judgment on Lunn's negligence and gross negligence claims, arguing that Lunn has failed to raise so much as a genuine issue of material fact that Defendants breached any duty owed to Lunn or proximately caused Lunn's termination.

---

[6] Although Lunn had previously suggested that Defendants were also negligent in failing to investigate the facts surrounding the 1960s Conviction before disclosing it to Praxair, see, e.g., Document No. 1 ex. B, Lunn failed to defend or to raise a genuine issue of material fact on this theory in response to Defendants' motion for summary judgment.  See Document No. 31.

Defendants first contend that there is no genuine issue of material fact regarding the Firm's allegedly negligent disclosure of the 1960s Conviction because Lunn, at a minimum, impliedly consented to the disclosure.  Defendants point to summary judgment evidence that: (1) for approximately four years preceding the INS interview, the Firm had reported all developments in the immigration case to both Lunn and Praxair without objection from either client; (2) although Lunn knew that DiPierro was going to contact Lercara regarding the outcome of the INS interview and the status of Lunn's green card application, Lunn did not object or otherwise instruct DiPierro not to disclose the 1960s Conviction; and (3) immediately after the INS interview, Lunn himself disclosed the 1960s Conviction to Hoose, Lunn's direct supervisor at Praxair. *See* Document No. 18 ex. 1-K at 12-18, 21-23, 32-33, 107-09; ex. 1-M at SRS 0781, 0791, 0815.  In addition, Defendants submit the expert reports of Steve Lee ("Lee"), former deputy general counsel to the State Bar of Texas, and Charles Foster ("Foster"), an experienced immigration attorney, both of whom agree that, given the parties' ongoing course of dealing, the nature of the information, and the circumstances surrounding the disclosure, Defendants' disclosure of the 1960s Conviction to Praxair did not violate Defendants' duty of confidentiality to Lunn.  Id. exs. 2-A, 3-A.

In response, Lunn offers only his own self-serving and conclusory affidavit, in which he asserts:

I did not know that any of my attorneys (including all attorneys who work in the same firm as them) would inform Praxair that I acknowledged being convicted of possession of stolen property.  If any of the attorneys had told me that they were going to disclose that information to Praxair, I would have told them not to disclose this information.  None of my attorneys asked me if they could disclose information about my conviction to Praxair.  None of my attorneys ever informed me that they would disclose to Praxair all information they obtained about me.

The e-mail I sent to John Hoose on December 5, 2001 states: "The lawyer that was with us at the INS interview said he would be in touch with Valerie [Lercara]."  When my attorney told me that he would be in touch with Valerie, I thought he would tell Valerie that I needed to submit additional documents to the INS.  I did not think he would tell Valerie what document I would submit or anything about my conviction.  The e-mail I sent to Mr. Hoose also states: "I am expecting Valerie will fill us in on where we stand or what I need to do now, while gloating I'm sure."  In this sentence, I'm referring to the fact that I was supposed to be transferred to the Operations Department in Praxair once my application for adjustment of status was approved.  Because the approval of my adjustment of status would be delayed since I needed to submit additional documents to the INS, I thought that, with regard to my transfer to the Operations Department, Valerie would fill us in on where we stand or what I need to do.  Valerie did not seem to like me, so I thought that she would gloat over the fact that the approval of my application for adjustment of status would be delayed.

I never gave any of my attorneys express or implied consent to inform anyone at Praxair about my possession of stolen property conviction.  Also, I did not think that Mr. Hoose would inform anyone at Praxair about my conviction from the 1960s.  I felt that Mr. Hoose knew that my conviction from the 1960s did not change the fact that I was a good employee.

Document No. 31 ex. 10.  "[T]he Court is not obligated in a summary judgment analysis to give weight to the non-movant's conclusory,

unsubstantiated assertions that contradict admissible evidence." Hunton v. Guardian Life Ins. Co. of Am., 243 F. Supp. 2d 686, 705 (S.D. Tex. 2002) (Atlas, J.).  Rather, "[t]he Fifth Circuit has regularly held that a 'summary assertion made in an affidavit is simply not enough evidence to raise a genuine issue of material fact.'"  Id. at 705 n.33 (quoting Melton v. Teachers Ins. & Annuity Assoc. of Am., 114 F.3d 557, 559 (5th Cir. 1997)); *see also* Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); Lechuga v. S. Pac. Transp. Co., 949 F.2d 790, 798 (5th Cir. 1992) ("Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence."). Although Lunn attempts in his affidavit to qualify the meaning of his e-mail to Hoose, Lunn does not deny (1) that he himself revealed the 1960s Conviction to his own supervisor Hoose before Niedzwiecki disclosed the conviction to Lercara, (2) that he knew DiPierro was going to be in contact with Lercara about the INS interview, or (3) that he placed no limitations on what DiPierro could disclose to Lercara about the INS interview.  In any event, Lunn's explanation about his subjective state of mind after the INS interview and/or when writing the e-mail to Hoose does not create a fact issue as to whether he impliedly consented to the disclosure because the objective circumstances indicated to DiPierro that he

had Lunn's permission to make the disclosure.  Thus, there is no evidence from which a reasonable trier of fact could find that DiPierro or any of the other Defendants breached the duty of confidentiality owed to Lunn.

Defendants also argue that they did not breach a duty of loyalty owed to Lunn when they continued to represent both Lunn and Praxair after the INS interview.  The undisputed summary judgment evidence is that after the INS interview, it did not occur to Lunn that Praxair would take any adverse action against him upon learning of the 1960s Conviction, which was older and apparently less serious than the 1976 Conviction that Lunn had already disclosed to Praxair during the immigration case without consequence.  Document No. 18 ex. 1-K at 32-33, 107-09.  Lunn specifically testified in his deposition that nothing that happened during the INS interview changed his belief that Praxair would still want him to get a green card and continue working for Praxair in the United States, id. at 109, and there is no summary judgment evidence that Defendants believed differently.  Because there is no evidence that Defendants knew or should have known that Praxair might take adverse action against Lunn based on the 1960s Conviction, there is no evidence that a conflict of interest actually existed when Niedzwiecki contacted Lercara.

Likewise, there is no summary judgment evidence that Defendants continued to represent Lunn after the conflict of

16

interest between Lunn and Praxair arose.  Instead, within a matter of days after the INS interview, the Firm informed Lunn that it could no longer represent him in the immigration case, ceased communicating with Praxair about the immigration case, and forwarded Lunn's immigration file to his new counsel.  There is no summary judgment evidence that the Firm acted in any way adversely to Lunn, or did anything further on the case except to withdraw, after the conflict between Lunn and Praxair arose.  Thus, there is no evidence from which a reasonable trier of fact could find that DiPierro or any of the other Defendants breached the duty of loyalty owed to Lunn.

Even assuming that Lunn could show that Defendants breached a duty owed to him, however, Lunn's negligence and gross negligence claims still fail because Lunn cannot show that Defendants' conduct was a proximate cause of his termination.  The components of proximate cause are cause-in-fact and foreseeability.  Rodriquez, 960 S.W.2d at 184 (citing Doe v. Boys Club of Greater Dallas, 907 S.W.2d 472, 477 (Tex. 1995)).  The test for cause-in-fact, or "but for causation," is whether the "act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred."  Id.  "Cause-in-fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible."  Id. at 185.  "Foreseeability, the other aspect of proximate cause, requires that a person of ordinary

17

intelligence should have anticipated the danger created by a negligent act or omission." <u>Doe</u>, 907 S.W.2d at 478. "The danger of injury is foreseeable if its general character . . . might reasonably have been anticipated." <u>Id.</u> (internal quotations and citations omitted); *see also* <u>Walker v. Harris</u>, 924 S.W.2d 375, 377 (Tex. 1996) (explaining that foreseeability depends on whether the general danger, rather than the exact sequence of events that produced the harm, was foreseeable).

In this case, Niedzwiecki's disclosure of the 1960s Conviction to Lercara--after Lunn had already made the same disclosure to Hoose--did not cause Praxair to terminate Lunn's employment. Instead, the uncontroverted summary judgment evidence establishes that upon learning of the 1960s Conviction, Praxair conducted its own investigation of Lunn and gave Lunn an opportunity to explain what had transpired during the INS interview and the circumstances surrounding the 1960s Conviction. It was Jones who determined, based on his interview of Lunn, that Lunn had lied about the 1969 and 1976 Convictions, and Lunn was terminated on that basis. *See* Document No. 18 exs. 1-C, 1-F. Thus, while Niedzwiecki's disclosure may have furnished a condition that made Lunn's termination possible by causing Praxair to initiate an investigation of Lunn, it was Jones's determination that Lunn had "fail[ed] to provide complete and accurate information to [Praxair] and [the] INS" that caused the termination. <u>Id.</u>

18

Moreover, there is no summary judgment evidence indicating that Lunn's termination was a foreseeable consequence of Niedzwiecki's disclosure. Nothing in the summary judgment record indicates that Defendants should have anticipated that Praxair would take adverse action against Lunn upon learning of the 1960s Conviction. When Niedzwiecki made the disclosure in December 2001, Lunn had been employed by Praxair for more than 18 years with a clean work record, and the 1960s Conviction, which occurred when Lunn was a juvenile and for which Lunn received no jail time, was more than 30 years old. Furthermore, Defendants knew that in 1997 Lunn had revealed a much more recent and arguably more serious offense (the 1976 Conviction), which occurred when Lunn was an adult and for which Lunn served jail time, but no disciplinary action against Lunn was taken or even suggested by anyone at Praxair. *See* Document No. 18 ex. 1-K at 16. Finally, the fact that Lunn himself did not foresee that Praxair would react any differently to the 1960s Conviction and voluntarily reported the conviction to Hoose establishes that Praxair's decision to terminate Lunn's employment could not "reasonably have been contemplated" as a result of Defendants' disclosure of the 1960s Conviction. *See* <u>Doe</u>, 907 S.W.2d at 478.

Because the summary judgment evidence does not raise a fact question concerning cause in fact or foreseeability, there is no evidence that Defendants' disclosure was a proximate cause of

19

Lunn's termination.  Defendants are therefore entitled to summary judgment on Lunn's negligence and gross negligence claims.

### 2.   Lunn's Tortious Interference Claim

Defendants also move for summary judgment on Lunn's tortious interference claim.  To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) proximate cause; and (4) actual damage or loss.  Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Martin v. Kroger Co., 65 F. Supp. 2d 516, 561 (S.D. Tex. 1999).  Defendants argue that Lunn cannot raise a fact issue on the elements of willful and intentional interference or proximate causation.

Although a plaintiff is not required to show that the defendant acted with intent to injure, the plaintiff must establish that the defendant's interference with the contract was intentional.  Fluorine On Call, Ltd. v. Fluorogas Ltd., 380 F.3d 849, 864 (5th Cir. 2004).  "Under the Restatement (Second) of Torts, interference is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result.'"  Bradford v. Vento, 48 S.W.3d 749, 757 (Tex. 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 766B cmt. d (1979)); accord RESTATEMENT (SECOND) OF TORTS § 766

20

cmt. j.[7]  If, however, the actor "had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper."  <u>Id.</u>

In this case, the summary judgment record contains no evidence from which it reasonably could be inferred that Niedzwiecki or any other Defendant willfully and intentionally interfered with Lunn's employment.  There is no evidence that Niedzwiecki informed Praxair of the 1960s Conviction out of a desire to induce Praxair to terminate Lunn's employment.   Nor is there evidence that Niedzwiecki or any other Defendant knew that Lunn's termination was certain or substantially certain to occur as a result of the disclosure.  Lunn argues that "[w]hether Defendants were substantially certain that disclosing Lunn's possession of stolen property conviction to Praxair would interfere with Lunn's employment with Praxair is a fact issue," such that his tortious interference claim should not be decided on summary judgment.  *See* Document No. 31 at 6.  It is well-established, however, that summary judgment may be appropriate even in instances where such elusive concepts as motive or intent are at issue if the nonmoving

---

[7] Although Lunn argues that <u>Bradford</u> is inapplicable because the court was considering a claim for tortious interference with a prospective contract, whereas Lunn's claim is a claim for tortious interference with an existing contract, the same intent is required both types of tortious interference claims.  *Compare* RESTATEMENT (SECOND) OF TORTS § 766 cmt. j (existing contract), *with* <u>id.</u> cmt. d (prospective contract); *see also* <u>id.</u> § 8A ("Intent").

party rests merely on conclusory allegations, improbable inferences, and/or unsupported speculation. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994); *cf.* Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993) ("Unsupported allegations of bad faith will not suffice to enable a party to survive summary judgment, especially in a case in which there is evidence that the defendant acted in good faith.  The nonmoving party must come forward with affirmative evidence . . . direct or circumstantial, which would allow for the reasonable inference that the moving party acted with a contrary intent or state of mind.") (internal citations and quotations omitted).  As Lunn offers no *evidence* from which it can be inferred that Defendants knew--let alone were substantially certain--that Niedzwiecki's disclosure would cause Praxair to terminate Lunn's employment, Lunn has failed to raise a triable issue of fact on whether Defendants engaged in a willful and intentional act of interference.

Moreover, as discussed above in connection with Lunn's negligence claims, Lunn has failed to raise so much as a fact issue that Niedzwiecki's disclosure of the 1960s Conviction was a proximate cause of Lunn's termination.  Accordingly, Lunn's tortious interference claim fails as a matter of law, and Defendants' motion for summary judgment will be granted.

22

3.  <u>Plaintiff's Other Claims</u>

Finally, Defendants move for summary judgment on the remainder of Lunn's claims, including his negligence per se, breach of contract, fraud, misrepresentation, intentional infliction of emotional distress, DTPA, and libel claims. *See* Document No. 17 at 18-21. Lunn offers no defense of these claims in response to Defendants' motion for summary judgment. *See* Document No. 31. Undefended claims may be regarded as abandoned. *See*, *e.g.*, <u>Scales v. Slater</u>, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting that plaintiff abandoned her disparate impact claim in district court when she neither contested defendant's arguments for dismissal of that claim nor suggested that her statistical evidence demonstrated pretext); <u>Thompson v. Exxon Mobil Corp.</u>, 344 F. Supp. 2d 971, 976 (E.D. Tex. 2004) (holding that where defendant fully briefed all of plaintiffs' claims on summary judgment--and plaintiffs only responded on two claims--plaintiffs were deemed to have abandoned their remaining claims).

Apart from the claims having been abandoned, however, Lunn's response is wholly insufficient to withstand Defendants' properly supported motion for summary judgment. *See* <u>Smith ex rel. Estate of Smith v. U.S.</u>, 391 F.3d 621, 625 (5th Cir. 2004) ("To survive summary judgment, the nonmoving party must submit or identify evidence in the summary judgment record (such as affidavits, depositions, answers to interrogatories, or admissions on file)

that designate *specific facts* showing there is a genuine issue of fact.") (citations omitted); <u>Ragas v. Tenn. Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. . . . Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (citations omitted).  Because Lunn points to no specific evidence that rebuts the arguments and evidence submitted by Defendants in support of their motion for summary judgment on these claims, and because no genuine issue of material fact has been raised on these claims, summary judgment will be granted on Lunn's negligence per se, breach of contract, fraud, misrepresentation, intentional infliction of emotional distress, DTPA, and libel claims.

## IV.  <u>Order</u>

For the reasons set forth, it is

ORDERED that Defendants Fragomen, Del Rey, Bernsen and Loewy, P.C.'s, Austin T. Fragomen, Jr.'s, Alfred J. Del Rey, Jr.'s, Peter H. Loewy's, John Quinn's, Robert DiPierro's, Paul Hejinian's, Michelle Myers's, and Tina R. Niedzwiecki's Motion to Strike and/or Exclude the Testimony of Plaintiffs' Expert John Gibson (Document No. 19) is GRANTED.  It is further

ORDERED that Defendants' Motion for Summary Judgment (Document No. 17) is GRANTED, and all of Plaintiff Stewart Lunn's individual and representative claims are DISMISSED on the merits.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 28th day of February, 2006.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE